**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Artem Mizgirev, et al., | No. CV-26-01969-PHX-SHD (JZB) |
| Petitioners, | **REPORT AND RECOMMENDATION** |
| v. | |
| Eric Rokosky, et al., | |
| Respondents. | |

**TO THE HONORABLE SHARAD H. DESAI, UNITED STATES DISTRICT JUDGE**:

Pending before the Court is Petitioner Artem Mizgirev and Olga Mizgireva ("Petitioners") "Petition for Writ of Habeas Corpus."[1] (Doc. 1.)

**I.    SUMMARY OF CONCLUSIONS.**

Petitioners are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) by the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") and has been detained since September 8, 2024. (*Id.* at 2.) Most recently, on January 28, 2026, an Immigration Judge ("IJ") denied Petitioners' asylum applications and ordered that Petitioners be removed. (*Id.* at 3, 40, 42.) Petitioner appealed the decision to the Board of Immigration Appeals ("BIA"). (*Id.* at 3, 44–45.) Their appeal remains pending.

Considering Petitioners' 20-month detention and the liberty interest at stake, the

---

[1]    This action was referred to this Court "for further proceedings and a report and recommendation". (Doc. 4 at 4.)

Court concludes that Petitioners' continued detention offends due process as applied in the specific circumstances of this action. Therefore, the Court **recommends** the Petition be **granted in part and denied in part**. Specifically, the Court recommends that Petitioners be granted an individualized bond hearing. Furthermore, the Court recommends that, at the bond hearing, the government bears the burden of proving Petitioners are a danger or flight risk by clear and convincing evidence.

**II.    BACKGROUND.**

Petitioner Artem Mizgirev is a native of the Czech Republic and Petitioner Olga Mizgireva is a native of the Russian Federation. (*Id.* at 29.) Both are citizens of the Russian Federation. (*Id.* at 2.) On or about September 7, 2024, Petitioners presented themselves at a port of entry pursuant to a U.S. Customs and Border Patrol ("CBP") One scheduled appointment. (*Id.*) Upon arrival, Petitioners were served with Notices to Appear that alleged that they did not "possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document[.]"[2] (*Id.* at 29.) Petitioners were not admitted or paroled after inspection. (*Id.*)

On November 26, 2024, Petitioners applied for asylum at this time. (*Id.*) On May 13, 2025, an IJ denied Petitioners' asylum applications and ordered them removed. (*Id.* at 7.) Petitioners timely appealed the decision to the BIA. (*Id.* at 3.) On December 3, 2025, the BIA remanded the decision to the IJ for further proceedings. (*Id.* at 25–26.) On January 28, 2026, the IJ issued an order denying Petitioners' asylum applications and ordered them removed to Russia. (*Id.* at 40–42.) On February 18, 2026, Petitioners appealed the IJ's decision to the BIA. (*Id.* at 44–45.) The appeal remains pending.

On March 23, 2026, Petitioners filed the instant Petition. (*Id.* at 1.) In their Petition, Petitioners assert that: (1) their prolonged detention without a bond hearing violates the

[2]    *I.e.*, Petitioners are subject to removal under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I)—codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). This provision states that an immigrant "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible." 8 U.S.C. §1182(a)(7)(A)(i)(I).

Due Process Clause of the Fifth Amend; and (2) that her due process requires a bond hearing where a noncitizen's immigration detention has become prolonged. (*Id.* at 3–4.) On March 26, 2026, the District Court ordered Respondents to respond to the Petition. (Doc. 5.)

On April 23, 2026, Respondents filed their Response. (Doc. 13.) In their Response, Respondents assert that: (1) Petitioners must be detained as arriving noncitizens under 8 U.S.C. § 1225(b)(2); and (2) Petitioners' due process claims are foreclosed by the entry fiction doctrine. (*Id.* at 2–7.) On April 30, 2026, Petitioners filed their Reply.[3] (Doc. 15.) For the following reasons, the Court finds Petitioners' entitled to a bond hearing.

**III.   28 U.S.C. § 2241 WRIT OF HABEAS CORPUS.**

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[4] challenging

---

[3]   The Court has read, but does not summarize, Petitioners' Reply.
[4]   Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which specifically stated:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Because Petitioners only challenge their prolonged civil detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

**IV.   DISCUSSION.**

**A.   Statutory Basis for Petitioner's Detention.**

"A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up). Petitioners do not alleged what provision they are currently held under. (Doc. 1.) However, they have noted that they have had a hearing regarding asylum before an IJ. (*Id.* at 3.) Respondent asserts that Petitioners are detained pursuant to 8 U.S.C. § 1225(b)(2). (Doc. 13 at 2–5.) Based upon undersigned's independent review of the record, the Court finds that Petitioners are currently detained pursuant to 8 U.S.C. § 1225(b)(2).

**B.   Due Process.**

The Court turns to Petitioners' due process claim. The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

**1.   Liberty Interest.**

"A liberty interest may arise from the Constitution itself[5] . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S.

---

[5]   "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

209, 221 (2005) (citations omitted). If a liberty interest is found, the Court then determines whether the administrative procedures are sufficient considering the "particular situation."[6] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In the instant action, the parties disagree whether Petitioners possesses a cognizable liberty interest. Petitioners argue that they have a liberty interest in being free from prolonged civil commitment. (Doc. 1 at 3–4.) Respondents contend that the entry fiction doctrine limits Petitioner's due process liberty interests to those procedures created by statute. (Doc. 13 at 5–7.) The Court disagrees with Respondents' reliance upon the entry fiction doctrine in the instant action.

The Court does not find that the entry fiction doctrine forecloses Petitioners' due process claim as to their present detention. The entry fiction doctrine asserted by Respondents is based upon the "distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has noted that the latter category of noncitizens have "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). Those noncitizens who are on the "threshold of initial entry" are not considered "to have 'effected an entry[.]'" *Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693). Put differently, "[w]hen an alien arrives at a port of entry— for example, an international airport—the alien is on U.S. soil, but the alien is not

---

[6] The Court notes that due process is a flexible concept. This, however, "does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481.

considered to have entered the country[.]" *Thuraissigiam*, 591 U.S. at 139. Therefore, while a citizen may be physically present within the country, they were "still in theory of law at the boundary line and had gained no foothold in the United States[.]" *Zadvydas*, 533 U.S. at 693 (quoting *Kaplan v. Tod*, 267 U.S. 228, 257–58 (1925)).

This distinction is predicated upon the following "fundamental proposition: 'The power to admit or exclude aliens is a sovereign prerogative.'" *Thuraissigiam*, 591 U.S. at 139 (cleaned up) (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). "The Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit, . . . and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892)).

Respondents, based upon the foregoing, extrapolate that Petitioners, due to the entry fiction doctrine, "are not entitled to any procedure beyond that which is prescribed by statute." (Doc. 13 at 5.) In other words, Respondents contend that Petitioners, who have not legally effected an entry but are still within the geographical bounds of the U.S., do not have a cognizable Fifth Amendment liberty interest because: (1) they only has a due process interest in those rights regarding admission that Congress has provided by statute; and (2) Congress only provided for temporary parole at the complete discretion of the attorney general. *See* (*id.* at 5–7.)

The Court disagrees with Respondents approach. Based on a review of current district court interpretation and a plain reading of Supreme Court precedent, it appears that, outside of the context of admissions, a noncitizen has a liberty interest to be free from civil confinement once their detention has become prolonged.[7]

Undersigned is persuaded by the interpretation of numerous courts, both in this District and its sister districts, that have held the entry fiction applies to the procedural

---

[7] Undersigned acknowledges there is an internal split amongst the learned jurists within the District of Arizona on the issue of due process for § 1225(b) petitioners. *Compare Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *7 (D. Ariz. Mar. 9, 2026) (granting immediate release) *with Escalona Plaza v. Rosa*, No. CV-26-00195-PHX-MTL (MTM) (D. Ariz. Mar. 16, 2026) (denying petition for writ of habeas corpus).

rights of noncitizens regarding *admission*, not *every* procedure occurring in the immigration context—*i.e.*, the entry fiction doctrine is inapplicable to challenges of a petitioner's length of detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026)[8]; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023). These decisions, their progeny, and similar such decisions in numerous district courts interpreting the entry fiction doctrine, are based on a finding that arriving noncitizens, such as Petitioner, have "only those rights *regarding admission* that Congress has provided by statute."[9] *Thuraissigiam*, 591 U.S. at 140 (emphasis added).

For example, the district court in *D.V.D v. U.S. Dep't of Homeland Sec.* recently illustrated why the entry fiction doctrine does not foreclose Petitioners' as-applied challenge to the length of their detention. In *D.V.D.*, the court noted that the, although the entry fiction doctrine "provide[d] an exception to the otherwise geographic scope of the Due Process Clause," the doctrine only impacted those due process rights "regarding admission." *D.V.D.*, 2026 WL 521557, at *30 (cleaned up) (quoting *Thuraissigiam*, 591 U.S. at 140). The court proceeded to "distinguish rights regarding admission," which relates to the government's "sovereign authority to admit noncitizens only in cases as it may see fit," with other interests that might be implicated by the Due Process Clause. *D.V.D.*, 2026 WL 521557, at *30 (cleaned up). Because the *D.V.D.* petitioners neither

---

[8] While the Court acknowledges that *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, undersigned is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, undersigned does not stand alone within the District of Arizona in relying upon *D.V.D. See Guevara Serrano*, No. CV-26-00110-PHX-DJH, at *3–4.

[9] There is a current split between the learned magistrate judges within the District of Arizona on the entry fiction doctrine. *Compare Balayan v. Unknown Parties*, 2:26-cv-00072-SMB (DMF), at *5–6 (D. Ariz. Feb. 19, 2026) (pending R&R recommending dismissal based on entry fiction doctrine) *and Mozhubaev v. Rosa*, 2:26-cv-00505-DJH (JFM), at *8–9 (D. Ariz. Apr. 10, 2026) (pending R&R recommending dismissal based on entry fiction doctrine) *with Avakian v. Rokosky*, 2:26-cv-00104-SHD (CDB), at *18 n.7 (D. Ariz. Feb. 24, 2026), *report and recommendation adopted*, 2:26-cv-00104-SHD (D. Ariz. Mar. 17, 2026) (finding that the entry fiction doctrine does not preclude an as-applied challenge to length of detention) *and Kaur v. Lyons*, 2:26-cv-00217-PHX-KML (ASB), at *5–7 (D. Ariz. Mar. 24, 2026) *report and recommendation adopted*, 2:26-cv-00217-KML (D. Ariz. Apr. 9, 2026) (finding that the entry fiction doctrine does not preclude an as-applied challenge to length of detention).

challenged their orders of removal nor the process resulting in those orders, the government's sovereign prerogative was not implicated. *Id.* at \*30–31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)). Hence, the entry fiction doctrine did not bar the petitioners' non-admissions due process challenges. *Id.* at \*31.

In a truncated fashion, the court in *Padilla* refuted the government's entry fiction argument. There, the court rejected the government's claim that the entry fiction doctrine broadly applied to any due process challenge, noting that such an assertion "is untethered to the claim in *Thuraissigiam* and the [Supreme] Court's reasoning." *Padilla*, 704 F. Supp. 3d at 1171. Rather, the entry fiction doctrine is constrained "only [to] those rights regarding admission that Congress has provided by statute." *Id.* at 1172 (emphasis omitted) (quoting *Thuraissigiam*, 591 U.S. at 140). Hence, where a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine does not apply. *Padilla*, 704 F. Supp. 3d at 1172.

To state the matter bluntly, a bond hearing—which may result in release—does not equate admissions. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, they "will be subject to the same removal proceedings as before, with no new right to remain"). "Thus, Petitioner does not purport to invoke any 'rights regarding admission.'" [10], [11] *Id.* at 110 (quoting

---

[10] *Cf. Counselman v. Hitchcock*, 142 U.S. 547, 565 (1892) ("Legislation cannot detract from the privilege afforded by the Constitution. It would be quite another thing if the Constitution had provided that no person shall be compelled in any criminal case to be a witness against himself, unless it should be provided by statute that criminating evidence extracted from a witness against his will should not be used against him. But a mere act of Congress cannot amend the Constitution, even if it should engraft thereon such a proviso."), *overruled on other grounds*, *Kastigar v. United States*, 406 U.S. 441 (1972).

[11] Respondents' reliance upon the Supreme Court's *Thuraissigiam* and *Mezei* decisions to rebut this conclusion are unavailing. First, the Court in *Thuraissigiam* did not announce that all of a noncitizens' rights were limited to those Congress provided by statute. Rather, the Supreme Court's holding was a limited to "those rights *regarding admission* that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. Furthermore, the noncitizen in question in *Mezei* was determined to "be prejudicial to the public interest for security reasons." *Mezei*, 345 U.S. at 208, 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority [provide] for such release exists."). Respondents do not contend that Petitioner is a national security risk. Additionally, as noted in *Ramirez*, "the statutory scheme underpinning" *Mezei* is "no longer in effect," so it is of limited import in the context of § 1225(b)(1)(B)(ii) noncitizens. *Ramirez*, 2019 WL 11005487, at \*5. Hence, *Mezei* is not directly applicable here.

*Thuraissigiam*, 591 U.S. at 140); *D.V.D.*, 2026 WL 521557, at *30 ("It makes sense to distinguish between rights regarding admission and other interests that might be protected by the Due Process Clause.").

Neither *Padilla* nor *D.V.D.* challenge "more than a century of Supreme Court case law confirm[ing] that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's *admissibility*." *D.V.D.*, 2026 WL 521557, at *30; *Padilla*, 704 F. Supp. 3d at 1171–72. Rather, the decisions, based on a textual analysis of *Thuraissigiam* and other Supreme Court precedent, found that where a party "challenge[s] neither their orders of removal nor any of the processes that produced those orders, their claims do not implicate, nor even relate to, the issue of their admissibility." *D.V.D.*, 2026 WL 521557, at *31; *Padilla*, 704 F. Supp. 3d at 1172 (finding that the class of plaintiffs were not challenging the admissions process nor their right to stay in the country, meaning that the entry fiction doctrine did not bar their due process claim).

Based on this persuasive statutory interpretation and "the Ninth Circuit's articulation of 'grave doubts' about the constitutionality of 'any statute that allows for arbitrary prolonged detention without any process,'" the Court finds that the entry clause doctrine does not prohibit as-applied challenges to a petitioner's length of detention. *Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019) (quoting *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. 'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'") (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))).

Most importantly, the Court finds that this holding comports with the Supreme Court's extensive catalog of immigration decisions. The Supreme Court has noted that in American society, "liberty is the norm," which necessitates that civil detention "is the carefully limited exception." *Foucha v. Louisiana*, 504 U.S. 71, 83 (1992) (quoting *Salerno*, 481 U.S. at 755); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court

repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)).

This contention is no less valid when considering that Petitioners are not citizens, *see Yick Wo v. Hopkins*, 118 U.S. 356, 368–69 (1886), because "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of" the "millions of aliens within the jurisdiction of the United States." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (citing *The Japanese Immigration Case*, 189 U.S. 86, 100–01 (1903)); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("[I]t must be concluded that all persons within the territory of the United States are entitled to the protection guarantied by th[e Fifth and Sixth Amendments], and that even aliens shall not be . . . be deprived of life, liberty, or property without due process of law.").

"The constitutional sufficiency of [due process] procedures provided in any situation, of course, varies with the circumstances." *Landon*, 459 U.S. at 33–34. Here, it appears that affording Petitioners constitutional due process protections not related to admissions is congruent with binding precedent.[12] In short, the Court finds that the "preservation of petitioner[s'] right to due process does not leave an unprotected spot in the Nation's armor." *Kwong Hai Chew v. Colding*, 344 U.S. 590, 602 (1953). Therefore, the Court declines to follow Respondents' characterization of the entry fiction doctrine.

//

---

[12] Of course, this finding "does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship." *Id.* at 78. The Constitution clearly provides Congress a "broad power over naturalization and immigration," including the power to "make[] rules that would be unacceptable if applied to citizens." *Id.* at 80–81. The instant findings do not subvert these notions.

### *2. Due Process Rights Regarding Petitioner's Prolonged Detention*.

Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b). *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, at *15–17 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor *Lopez* test); *see also Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *7 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *22 (S.D. Ind. Mar. 13, 2026) (applying the same 6-factor test, but calling it the *Jamal A* test) (*citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 U.S. Dist. LEXIS 10299, at *11–15 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews*, 424 U.S. at 335).

Out of the abovementioned tests, the Court finds the *Banda* test the most applicable to the situation at hand. Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118.

The Court finds the *Banda* test more suitable than the *Mathews*[13] and *Lopez*[14] tests.

---

[13] Under the *Mathews* test, the Court considers:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
*Mathews*, 424 U.S. at 335.
[14] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879. The Court notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and] are, in essence, a truncated version of the factors enumerated in *Banda*[.]" *Andrews*, 1:25-cv-00333-JLT-HBK, at *14. Because the six-factor *Banda* test is more detailed than

Regarding the *Mathews* test, the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided."[15] *Banda*, 385 F. Supp. 3d at 1106–07.

           *i.*        *Length of Detention.*

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. "It is important to bear in mind the context: The

---

*Lopez* and is better suited for noncitizens held pursuant to § 1225(b), the Court accordingly elects to apply it.

[15] In any event, the outcome applying *Mathews* and *Banda* would be the same—*i.e.*, Petitioners would be entitled to individualized bond hearings. Applying the first *Mathews* element, undersigned finds that Petitioners have a strong private interest in their liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha*, 504 U.S. at 80).

Turning to the second element, considering the prolonged nature of Petitioners' detention, the Court finds a large risk of erroneous deprivation in the absence of individualized bond hearings. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the government interest in detaining Petitioners without an individualized bond hearing is low. First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); *cf. Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person"). Therefore, the third factor minimally favors the government. Accordingly, applying the *Mathews* test to Petitioners' 20-month detention, undersigned concludes that due process requires they be provided with individualized bond hearings.

detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Petitioners have been held in DHS custody for 20 months. Under the first *Banda* factor, where a petitioner's current detention exceeds a six-month threshold their "detentions become less and less reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 U.S. Dist. LEXIS 56882, at *8 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 U.S. Dist. LEXIS 21291, at *8 (W.D. Wash. Feb. 2, 2026).

Petitioners have been detained for 20 months. This is well beyond the six-month threshold, and well beyond the length of confinement other courts have found to be prolonged. *See, e.g.*, *Liang Ding v. Noem*, No. 1:26-cv-01217-DJC-SCR, 2026 U.S. Dist. LEXIS 58212, at *3–4 (E.D. Cal. Mar. 19, 2026) (noting that an eight-month detention is sufficiently prolonged to warrant granting relief); *Amado v. U.S. Dep't of Just.*, No. 25-cv-2687-LL (DDL), 2025 U.S. Dist. LEXIS 217453, at *14 (S.D. Cal. Nov. 4, 2025) ("To date, [p]etitioner has been in detention for approximately thirteen months. Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable."); *Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 U.S. Dist. LEXIS 203614, at *13 (S.D. Cal. Oct. 15, 2025) (noting that 13 months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time."). In light of these decisions, and based upon the facts of the instant action, the Court finds the length of Petitioners' detention strongly favors granting relief.

ii. *Likely Duration of Future Detention*.

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end

soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain considering Petitioners' appeal to the BIA, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioners. *See Kadir*, 2025 U.S. Dist. LEXIS 203614, at *8 ("Petitioner's future detention can last several more months or even years during the adjudication of Respondents' appeal to the BIA."); *see also Liang Ding*, 2026 U.S. Dist. LEXIS 58212, at *4 ("[E]ither party may seek Ninth Circuit review of the [BIA's] decision. Therefore, [p]etitioner faces indefinitely prolonged detention while administrative and potentially judicial appeals of his removal order are decided. Thus, this factor weighs in [p]etitioner's favor.").

      iii.  *Conditions of Detention*.

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted). Neither party has addressed Petitioners' conditions of detention. Hence, the Court finds this factor neutral.

      iv.  *Delays in Removal Proceedings*.

Next, the Court shall analyze the "fourth and fifth [*Banda*] factors—both which consider delays caused by the parties—together." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioners. "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up).

In the instant action, Petitioners have appealed the IJ's most recent denial of their asylum claim and order of removal. While it is true that Petitioners have delayed their own removal, the Court does not find that this was a dilatory tactic aimed at extending their detention so they could then seek release. Regardless, based on a review of our sister districts' caselaw, the Court is persuaded that a petitioner "should not be effectively punished through indefinite detention for exercising her right to appeal her removal order." *Yuehui Chen v. Noem*, No. 5:26-CV-00397-SSS-DTB, 2026 WL 425694, at *6 (C.D. Cal. Feb. 13, 2026); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) ("But the government's suggestion that Petitioner's choice to appeal adverse rulings weighs against any constitutional claim that he may make regarding his detention during the course of the appeal is untenable, and the Court will not require that a petitioner who pursues his available legal remedies must forego any challenge to the reasonableness of his detention in the interim.") (cleaned up); *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. U.S. Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) ("Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable.") (citing *Liban M.J. v. Sec. of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019)); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) (finding that delays caused by the petitioner to "develop affirmative relief in the face of his removability . . . . does not deprive him of a constitutional right to due process," especially because "the proceedings have been significantly prolonged for reasons beyond his control."). Hence, the fourth factor minimally favors Respondents.

The fifth factor considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other

non-ICE government officials." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10–11 (S.D.N.Y. May 23, 2018)). While Petitioners' appeal has caused a delay in their removal, the Court notes that "any 'delay in this case is a product of the BIAs and Ninth Circuit's 'crowded dockets,' which courts typically attribute to the Government—not the Petitioner." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Djelassi v. Ice Field Off. Dir.*, 434 F. Supp. 3d 917, 923 (W.D. Wash. 2020)). Hence, the fifth factor slightly favors Petitioners.

> v.   *Likelihood of Removal*.

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). Based on the current record, "the Court lacks sufficient information to comment on the potential merits of [P]etitioner[s'] pending appeal." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12. Therefore, the sixth factor is neutral.

> vi.   *Conclusion*.

Considering three of the *Banda* factors favor Petitioners, one factor slightly favors Respondents, and two factors are neutral, the Court concludes that Petitioners' continued detention under § 1225(b)(2) has become unreasonable. Therefore, Petitioners are entitled to relief.

**C. Remedy**.

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ. *See Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12 (finding that "there is no authority" supporting relief in the form of immediate release, but there is authority supporting relief in the form of a bond hearing) (cleaned up); *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an

immigration judge rather than immediate release."); *Kaur v. Lyons*, 2:26-cv-00217-KML, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a 1225(b)(2) petitioner and granting a bond hearing).

At the bond hearing, Respondents bear the burden of proving that Petitioners are a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011). Additionally, "[i]n the event Petitioner[s are] 'determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond,' the [IJ] should consider Petitioner[s'] financial circumstances and alternative conditions of release." *also Liang Ding*, 2026 U.S. Dist. LEXIS 58212, at *7 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017)).

Accordingly,

**IT IS RECOMMENDED** that Petitioners' Petition for Writ of Habeas Corpus (doc. 1) be **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER RECOMMENDED** that Petitioners' request for immediate release be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Petitioners be provided individualized bond hearings within **SEVEN (7) DAYS** if this Report and Recommendation is adopted. These bond hearings shall comply with the procedural requirements set out in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). The government shall bear the burden of proving that Petitioners are a danger or flight risk by clear and convincing evidence. Additionally, the IJ should consider Petitioners' financial situation and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017). In the alternative, the government may release Petitioners under appropriate conditions of release.

**IT IS FURTHER RECOMMENDED** that Petitioners **SHALL** be provided with adequate notice prior to the hearing.

**IT IS FURTHER RECOMMENDED** that the government shall file a status report with the Court regarding the bond hearing and whether Petitioners were released within **FOURTEEN (14) DAYS** if this Report and Recommendation is adopted.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The Parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 6, 72. Thereafter, the Parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 12th day of May, 2026.

_____
Honorable John Z. Boyle
United States Magistrate Judge